IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WAYNE BESEN, )
)
    Plaintiff, )
)
v. )
) Civil Action No. 3:12CV204—HEH
PARENTS AND FRIENDS )
OF EX-GAYS, INC.; and )
GREGORY QUINLAN, )
)
    Defendants. )

## MEMORANDUM OPINION

This defamation action is presently before the Court on two motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)—one filed by Defendant Gregory Quinlan individually, and the other filed jointly by Quinlan and Defendant Parents and Friends of Ex-Gays, Inc. For the reasons set forth herein, Defendants' joint motion will be granted, and Quinlan's separate motion will be denied as moot.

### I. BACKGROUND[1]

Plaintiff Wayne Besen ("Besen" or "Plaintiff") serves as the Executive Director of Truth Wins Out ("TWO"), "a non-profit organization that provides education about anti-gay religious extremism, monitors anti-LGBT (lesbian, gay[,] bi-sexual and transgender) organizations, and advocates for LGBT equality." (Compl. ¶ 6.) In his capacity as Executive Director, one of Besen's principal responsibilities is overseeing TWO's

---

[1] As required by Rule 12(b)(6), the Court assumes Plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to Plaintiff. *See Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

1

fundraising efforts. (*Id.*) Besen alleges that his success in that endeavor depends largely on his "reputation and credibility." (*Id.*)

Defendant Gregory Quinlan ("Quinlan") is the President and Chief Executive Officer of Parents and Friends of Ex-Gays, Inc. ("PFOX") (together with Quinlan, "Defendants"), which Plaintiff describes as "a non-profit organization that purports to support families and educate the public on sexual orientation and [which] maintains that homosexual individuals can change their sexual orientation." (*Id.* ¶ 7.) As President and CEO, Quinlan frequently makes "public appearances" at conferences and in "media interviews" for the purpose of promoting PFOX's message. (*Id.* ¶ 9.)

On October 7, 2011, Quinlan appeared on behalf of PFOX as a guest on *NewsPlus with Mark Segraves* on WDCW-TV, a local television station that broadcasts throughout the greater Washington, D.C. metropolitan area, including parts of Virginia. (*Id.* ¶ 10.) During the interview, in the course of discussing the work of TWO, Quinlan made comments concerning Besen. Specifically, he remarked: "Wayne Besen. He's asked for people, you know, somebody needs to run Greg over. He needs to be hit with a bus. Somebody should inject him with AIDS. Those are the things that Wayne Besen and Truth Wins Out says about me." (*Id.*)

Sometime after the interview, Besen demanded that Quinlan "retract his statement that Besen wanted someone to murder or harm him." (*Id.* ¶ 11.) Quinlan refused to do so. Instead, Quinlan reiterated on PFOX's weblog on December 9, 2011 that his comments about Besen were accurate (*id.*), stating:

> The truth is that Besen once said to me in a private conversation that someone should run me over with a bus or inject me with AIDS. Did I think he was

2

serious? No. I knew it was just Wayne being Wayne; one part bluster, two parts hyperbole and three parts hot air.

(Def.'s Mem. Supp. Ex. E.) Quinlan also suggested in the blog posting that "perhaps Wayne's attitude had something to do with his firing from the Human Rights Campaign." (*Id.*; Compl. ¶ 13.)

Based on the foregoing, Besen filed suit in the Circuit Court of Northumberland County, Virginia on February 15, 2012, claiming that Quinlan's remarks were defamatory *per se*, and therefore presumed to be injurious to his "business and personal reputation." (Compl. ¶ 17.). In his Complaint, Besen denies the veracity of Quinlan's representations both during the televised interview and online, and asserts that Quinlan made the statements with knowledge of their falsity. (*Id.* ¶ 15.) He further alleges that Quinlan was speaking "in the ordinary course and scope of Quinlan's position as President of PFOX," such that his statements are attributable to PFOX for purposes of liability. (*Id.* ¶¶ 16-17.)

After timely removing to this Court, Defendants filed the instant motions for dismissal. Plaintiff has responded,[2] and the matter is now ripe for decision.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint.... [I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[2] Because Defendants filed their motions on March 23, 2012, Plaintiff's response was due on April 6, 2012. *See* E.D. Va. R. 7(F). Plaintiff did not file his brief in opposition until April 13— seven days late. Nonetheless, the Court will permit Plaintiff's untimely submission and consider the arguments set forth therein.

3

544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950; *see also Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Generally, the district court does not examine extrinsic materials when evaluating a complaint under Rule 12(b)(6). The court may, however, consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). In addition, the Court may consider documents attached to the defendant's motion to dismiss if those documents are central to the plaintiff's claim or "sufficiently referred to in the complaint," so long as the plaintiff does not challenge their authenticity. *Witthohn v.*

*Fed. Ins. Co.*, 164 Fed. App'x 395, 396-97 (4th Cir. 2006) (per curiam); *see Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

## III. ANALYSIS

Under Virginia law,[3] a plaintiff claiming defamation must prove that the defendant (1) published (2) an actionable statement with (3) the requisite intent. *See Gazette, Inc. v. Harris*, 229 Va. 1, 15 (1985). At common law, words that impute to a person the commission of a crime of moral turpitude or which prejudice a person in his profession or trade are actionable as defamation *per se*. *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713 (2006) (citing *Fleming v. Moore*, 221 Va. 884, 889 (1981)). However, pure expressions of opinion—"speech which does not contain a provably false factual connotation, or ... which cannot reasonably be interpreted as stating actual facts about a person"—are not actionable. *Yeagle v. Collegiate Times*, 255 Va. 293, 295 (1998).

So-called "public figure" plaintiffs—individuals "involved in issues in which the public has a justified and important interest"—are held to an even higher standard. *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 134, 162-65 (1967) (extending the "actual malice" standard articulated in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), to both public figures as well as public officials). In order to recover for reputational injury, a public figure must prove by clear and convincing evidence that the speaker acted with "actual malice"—that is, "that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974). This additional requirement embodies our "profound national commitment to

---

[3] Both parties agree that Virginia law governs this matter. Because the Court resolves the present dispute on federal constitutional grounds, however, the outcome would be the same regardless of which state's law were to apply.

5

the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks" on public figures. *New York Times Co.*, 376 U.S. at 270. Whether a plaintiff is a public figure is a question of law for the court to decide. *Carr v. Forbes, Inc.*, 259 F.3d 273, 278 (4th Cir. 2001). Here, Defendants contend that even if Quinlan's remarks were defamatory and otherwise actionable, Plaintiff has failed, as a public figure, to sufficiently allege facts which demonstrate that Quinlan knew the statements to be untrue.

### A. Plaintiff is a Limited-Purpose Public Figure

As an initial matter, the parties dispute whether Besen constitutes a public figure, such that his claims should be scrutinized under the more stringent "actual malice" framework. Defendants argue that Besen's active involvement in the national debate surrounding the issue of "gay rights and ex-gay rights" has elevated him to public figure status in the relevant field. (Defs.' Mem. Supp. at 8.) In response, Besen acknowledges that he has published multiple books, participated in public interviews, and that he "may be known among some gay rights activist circles and obviously to some involved in organizations that oppose gay rights such as PFOX," but asserts that "most individuals on the street in the metropolitan Washington, D.C. area" would not recognize his name. (Pl.'s Mem. Opp'n at 8-9.) Accordingly, he contends that he has not achieved the sort of "general fame or notoriety in the community" required to realize public-figure status. (*Id.* at 9 (quoting *Gertz*, 418 U.S. at 352).) Plaintiff's argument is misguided.

Even if Besen's renown is not so widespread as to make him "a public personality for *all* aspects of his life," he may nonetheless be a public figure in the limited arena in which

6

the defamation occurred. *Gertz*, 418 U.S. at 351-52 (emphasis added). Indeed, the Fourth Circuit has recognized three distinct classes of public personalities:

> (1) "involuntary public figures," who become public figures through no purposeful action of their own; (2) "all-purpose public figures," who achieve such pervasive fame or notoriety that they become public figures for all purposes and in all contexts; and (3) "limited-purpose public figures," who voluntarily inject themselves into a particular public controversy and thereby become public figures for a limited range of issues.

*Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1551-52 (4th Cir. 1994). Here, Defendants argue not that Besen should be considered a public figure in *all* instances, but rather that his purposeful involvement in the controversy underlying Quinlan's statements render Besen a *limited*-purpose public persona.

Whether a plaintiff is a limited-purpose public figure depends upon "the nature and extent of [the] individual's participation in the particular controversy giving rise to the defamation." *Gertz*, 418 U.S. at 352. To that end, courts must consider whether "(1) the plaintiff has access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in the public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statement; and (5) the plaintiff retained public-figure status at the time of the alleged defamation." *Wells v. Liddy*, 186 F.3d 505, 534 (4th Cir. 1999) (citing *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 708-10 (4th Cir. 1991) (en banc)). Applying this framework to the facts at hand, it is readily apparent that Besen qualifies as a limited-purpose public figure.

First, it can hardly be debated that the allegedly defamatory statements giving rise to this matter relate to an existing public controversy—that is, "a real dispute, the outcome of

7

which affects the general public or some segment of it in an appreciable way." *Foretich*, 37 F.3d at 1554 (quoting *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980)). For much of recent history, issues of gay rights and equality have featured prominently in the national spotlight—often with heated disagreement and debate in tow. In fact, Plaintiff concedes as much by attaching to his pleadings and briefing various publications addressing the strongly held scientific, political, and religious views on related matters. Even more particularly, Plaintiff recognizes the public "dispute," in which both he and Defendant Quinlan are actively involved, concerning the question of whether one's "sexual orientation can be changed." (Compl. ¶ 9.)

Second, as the chief spokesperson for a non-profit advocacy group whose mission is to "provide[] education about anti-gay religious extremism, monitor[] anti-LGBT organizations, and advocate[] for LGBT equality" (*id.* ¶ 6), Besen has clearly "thrust[] ... his personality into the 'vortex' of [this] important public controversy." *Curtis*, 388 U.S. at 155. Undoubtedly, the very purpose of Plaintiff's organization is to push the tides of public opinion and policy in a certain direction. In fact, Plaintiff himself claims to have "caused significant embarrassment to the 'ex-gay' brand and exposed a lack of change in sexual orientation of members of organizations such as PFOX." (Pl.'s Mem. Opp'n at 9.) By his own admission, therefore, Besen has "assumed a role of special prominence in the public controversy," and used his position "to influence the resolution or outcome of the controversy." *Wells*, 186 F.3d at 534; *accord Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 n.4 (4th Cir. 1993) (finding "plaintiffs' status as 'public figures' [to be] irretractably

8

admitted on the face of the complaint" where the complaint "extol[led] [the plaintiffs'] nationwide charitable activities and their long (twenty years) duration").

Moreover, Besen's publications, media appearances, and self-acclaimed ability to impair the opposing campaign demonstrate that, at the time of the events preceding this action, he "commanded sufficient continuing public interest and had sufficient access to the means of counterargument to be able to expose through discussion the [purported] falsehood and fallacies of the defamatory statements." *Curtis*, 388 U.S. at 155 (internal quotations marks and citation omitted). Besen had available, and in fact utilized, avenues through which he could refute and counter any falsehoods or misrepresentations in Quinlan's comments.[4] Thus, this factor, too, counsels in favor of deeming Besen a public personality in his chosen field. Given his public visibility, and because he engaged in a course of action that invited inevitable comment and attention, this Court finds that Plaintiff is a limited-purpose public figure.

**B.  Plaintiff Has Not Alleged Facts from Which the Court Can Reasonably Infer that Defendant Quinlan Acted with "Actual Malice"**

As a public figure, Plaintiff must show that the allegedly defamatory statements were made with knowing falsity or with reckless disregard for the truth.[5] "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion

---

[4] For example, Plaintiff himself attached to his Memorandum in Opposition to Defendants' Motion to Dismiss several online news articles in which he denies Quinlan's statements. (*See, e.g.*, Pl.'s Mem. Opp'n Ex. 1 ("Accusations of felonious behavior demands [sic] proof, and Besen rightly demands that Quinlan produces it. Besen also adds that he is exploring his legal options."); Ex. 2 ("For the record, Besen denies ever making the comments.").)

[5] For purposes of its analysis only, the Court assumes Quinlan's statements to be otherwise actionable as defamation.

9

that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). As the Fourth Circuit has observed, "establishing actual malice is no easy task, because the defamation plaintiff bears the burden of proof by clear and convincing evidence." *CACI Premier Tech. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008) (quoting *Carr*, 259 F.3d at 282); *see also Ryan v. Brooks*, 634 F.2d 726, 733 (4th Cir. 1980) ("[T]he *New York Times* standard is a difficult one for libel plaintiffs to meet, and [] its application may sometimes produce harsh results."). At this juncture, although Plaintiff need not *prove* that Quinlan acted with actual malice, his Complaint must contain sufficient facts to overcome the plausibility hurdle established by Rules 8 and 12(b)(6).

Although Federal Rule of Civil Procedure 9(b) requires plaintiffs to allege "fraud or mistake" with particularity, "[m]alice, ... and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). But, as the Supreme Court made clear in *Iqbal*, "'generally' is a relative term.... [Rule 9(b)] does not give [a party] license to evade the less rigid—though still operative—strictures of Rule 8." 129 S. Ct. at 1954. Thus, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Applying that principle "in cases where a defamation claim requires a showing of actual malice, courts in the Eastern District of Virginia have found that 'conclusory allegations regarding the [defendants'] intent ... are insufficient to survive a motion to dismiss.'" *Hanks v. WAVY Broad., LLC*, No. 2:11cv439, 2012 WL 405065, *12 (E.D. Va. Feb. 8, 2012) (quoting *Zhang v. Regan*, No. 1:10cv1329, 2011 WL 1456188, *8 (E.D. Va. Apr. 14, 2011)).

10

Here, an examination of the allegations set out in Plaintiff's Complaint reveals only unadorned accusations of malice and "a formulaic recitation of the elements of a cause of action." *Iqbal*, 129 S. Ct. at 1949. First, the assertion that "Quinlan's statements about Besen in all instances were false, Quinlan knew the statements were false, Quinlan had no reasonable grounds for believing such statements were true, and no facts existed that would have substantiated Quinlan's defamatory statements" is wholly insufficient. (Compl. ¶ 15.) Addressing a nearly identical allegation in *Mayfield v. NASCAR, Inc.*, No. 10-2437, 2012 WL 990520 (4th Cir. March 26, 2012), the Fourth Circuit deemed the plaintiff's claim to be merely "a conclusory allegation" and "a mere recitation of the legal standard," and thus "precisely the sort of allegation[] that *Twombly* and *Iqbal* rejected." *Id.* at *6 (considering the assertion that the defendants' statements "were known by them to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity"). Standing alone, such bald contentions do not pass 12(b)(6) muster. *See id.* (affirming the district court's dismissal of the complaint); *Hanks*, 2012 WL 405065, at *13 (dismissing the plaintiff's complaint because it contained only "repeated boilerplate assertions that 'the defendants made the statements knowing they were false and with reckless disregard for the truth or falsity, and after having been put on notice that the statements relating to the plaintiff were false'").

Setting aside Plaintiff's legal conclusions, this Court cannot reasonably infer from the scant facts alleged that Quinlan was "aware of the probable falsity of [his] statements about [Besen]." *Ryan*, 634 F.2d at 732. That is, Plaintiff has not pled any facts which, taken as true, demonstrate that Quinlan knew—or should have been aware—that Besen was not

11

actually "fired" from Human Rights Campaign, or that Besen had not, in fact, directed violent rhetoric at Quinlan at some point in the past. Accordingly, Plaintiff has not met his burden as a limited-purpose public figure to plausibly allege actual malice, and his defamation claims must be dismissed.

Because the dearth of *any* factual allegations demonstrating malice renders Plaintiff's claims unsustainable as a matter of law, this Court need not consider whether Plaintiff has properly pled the other elements of a defamation cause of action. Nor need the Court reach Defendants' arguments that Quinlan's statements were not defamatory, and that Quinlan is individually immune from civil liability under Va. Code § 8.01-220.1.1.

## IV. CONCLUSION

For the foregoing reasons, Defendants' joint motion to dismiss will be granted, and Quinlan's separate motion for dismissal on immunity grounds will be denied as moot. As a result, this action will be dismissed in its entirety.

An appropriate Order will accompany this Memorandum Opinion.

                                                /s/
                                      Henry E. Hudson
                                      United States District Judge

Date: April 25, 2012
Richmond, VA